CLERK'S OFFICE
A TRUE COPY
Jan 25, 2021
s/ Daryl Olszewski
Deputy Clerk, U.S. District Court
Eastern District of Wisconsin

# UNITED STATES DISTRICT COURT

## for the

### Eastern District of Wisconsin

| | |
|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched<br>or identify the person by name and address)*<br><br>Residence of Carlos Rivera, located at 4509 47th<br>Street, Kenosha, WI 53144, and more fully described<br>in Attachment A | )<br>)<br>)<br>)<br>)<br>)    Case No.   21   MJ   49 |

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A

located in the _____ Eastern _____ District of _____ Wisconsin _____ , there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☐ contraband, fruits of crime, or other items illegally possessed;

☐ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 26 U.S.C. Sections 7201 and 7206(1) and 18 U.S.C. Section 1344 | Tax evasion and filing false tax returns<br>Bank fraud |

The application is based on these facts:

See attached Affidavit

☐ Continued on the attached sheet.

☐ Delayed notice of _____ days *(give exact ending date if more than 30 days:* _____ *)* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's signature*

IRS Special Agent Zachary E. Stegenga
_____
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by
___ telephone _____ *(specify reliable electronic means).*

Date: ___ January 25, 2021 ___

_____
*Judge's signature*

City and state: Milwaukee, WI

Hon. William E. Duffin, U.S. Magistrate Judge
_____
*Printed name and title*

**AFFIDAVIT IN SUPPORT OF APPLICATION FOR SEARCH WARRANT**

I, Zachary E. Stegenga, being duly sworn, depose and state:

**BACKGROUND AND EXPERIENCE OF AFFIANT**

1.    I have been a Special Agent with the Internal Revenue Service, Criminal Investigation ("IRS-CI") since October 2008.  I am presently assigned to the Chicago Field Office and conduct investigations in the Eastern District of Wisconsin.  Through my training and experience I have learned, among other things, financial investigative techniques used to carry out my responsibilities of conducting criminal investigations relating to violations of the Internal Revenue Code (Title 26, United States Code), the Money Laundering Control Act (Title 18, United States Code), the Bank Secrecy Act (Title 31, United States Code), and other related offenses.  I have conducted numerous investigations involving violations of these federal laws.  I have been the affiant on numerous search warrants and have participated in the execution of numerous other search warrants.

**LOCATIONS TO BE SEARCHED**

2.    This affidavit is submitted in support of the application for a search warrant for the residence of Carlos Rivera, 4509 47th Street, Kenosha, Wisconsin 53144, located in the Eastern District of Wisconsin.  This location is more particularly described in Attachment A.

3.    Based on the facts disclosed in this affidavit, there is probable cause to believe that located at the premises identified in paragraph 2 of this affidavit are the fruits, evidence, and instrumentalities of criminal offenses in violation of Title 26, United States Code, § 7201 (tax evasion) and § 7206 (1) (filing false tax returns), and Title 18, United

1

States Code, § 1344.  The items to be seized are described more particularly in Attachment B.

## ELEMENTS OF THE OFFENSES

4.      To establish a violation of 26 U.S.C. § 7201, the government must prove each of the following elements:

(1) On the date for filing a federal tax return, federal tax was due and owing by the defendant;

(2) The defendant knew he had a legal duty to pay the tax;

(3) The defendant did some affirmative act to evade payment, assessment, or computation of the tax; and

(4) In doing so, the defendant acted willfully, with the intent to violate his legal duty to pay the tax.

5.      To establish a violation of 26 U.S.C. § 7206(1), the government must prove each of the following elements:

(1) The defendant prepared an income tax return;

(2) The income tax return was false as to a material matter;

(3) The defendant signed the income tax return, which contained a written declaration that it was made under penalties of perjury;

(4) The defendant acted willfully; and

(5) The defendant filed, or caused someone else to file, the tax return with the Internal Revenue Service.

6.      To establish a violation of 18 U.S.C. § 1344, the government must prove each of the following elements:

(1) There was a scheme to defraud a bank or other financial institution, or to obtain money, funds, or other property owned by, or in the custody or control of the bank or other financial institution;

(2) The defendant knowingly executed the scheme;

(3) The defendant acted with the intent to defraud;

(4) The scheme involved a materially false or fraudulent pretense, representation, or promise; and

(5) At the time of the charged offense, the deposits of the bank or other financial institution were federally insured.

**OVERVIEW**

7.     The information detailed in this affidavit is based on my personal knowledge and observations, Internal Revenue Service ("IRS" in this affidavit) records, public records, third party witnesses including financial institutions, and my own investigative efforts.  I believe these sources of information to be credible and reliable based on the corroboration of the information and my experience with these matters. The information in this affidavit does not include all of my knowledge and investigation into this case.  These facts are presented for the sole purpose of establishing probable cause in support of the application for a search warrant.

8.     Based on my training and experience, and on collaboration with other experienced law enforcement officers, I am aware that:

   a. It is necessary for profit-producing businesses to maintain adequate books and records of account to derive gross receipts and business expenses used to determine taxable income.  These records typically include: ledgers, journals, receipts, invoices, bank statements, income tax returns, and payroll records.

   b. Businesses typically maintain purchase and sales records, accounts receivable and payable, customer contact information, and other books, records, and notes used to document business income and expenses.  These records are typically maintained for long periods of time by business owners and bookkeepers in secure, easily accessible locations such as their offices, businesses, and residences.

   c. According to IRS Publication 583, Starting a Business and Keeping Records, businesses must keep records that support an item of income or deduction on a return until the period of limitations for that return runs out.

3

The period of limitations is the period of time within which you can amend your return to claim a credit or refund, or the IRS can assess additional tax. The minimum period of limitations is 3 years.

d.  Individuals who evade the assessment of income taxes often maintain books and records disclosing their true financial activity, which are different from the books and records used to compute their reported taxable income. Individuals maintain the accurate set of books so they have accurate financial data to manage and run their businesses.  It is common for individuals who evade the assessment of income taxes to store these accurate financial records in secure locations within their residences, businesses, offices, safes, garages, storage facilities, and safe deposit boxes, and to maintain the records for years.

e.  Individuals and businesses store financial and business records in electronic format using tools such as computers, compact disks, flash drives, and the internet.  They also store hardcopies of these records.  These electronic devices and hardcopy records are typically maintained for years by business owners and bookkeepers in secure locations within their residences, businesses, offices, safes, garages, storage facilities, and safe deposit boxes.

f.  Financial and business records stored in electronic format, including on computers, tend not to dissipate and typically are recoverable for years by the methods set forth in paragraphs 29 to 33 below.

g.  It is common for individuals and businesses involved in tax evasion to conceal skimmed gross receipts by diverting the gross receipts to personal bank accounts and cashing check receipts instead of depositing them to business accounts.

h.  It is common for individuals involved in tax evasion to pay employee wages with skimmed cash generated by their businesses and to under report the wages for employment tax purposes.  By under reporting both gross receipts and salaries/ wages expenses, the tax evader maintains a profit margin that will not raise suspicion, while allowing the individual to evade the payment of employment and other taxes.

### FACTS SUPPORTING PROBABLE CAUSE TO SEARCH

9.  I am currently investigating allegations that Carlos Rivera (herein Rivera) evaded the assessment of federal income taxes and filed false federal income tax returns from at least 2013 through 2019, on income he earned from Carlos4Seasons LLC, which is Rivera's four-seasons landscaping, lawncare, and snow-removal business. I am also

4

investigating allegations that Rivera evaded the assessment of employment taxes by paying employees in cash and not reporting any wages or employment taxes to the Internal Revenue Service or Social Security Administration.

10.     Records obtained from the State of Wisconsin, Department of Financial Institutions ("WI DFI" in this affidavit) show Rivera organized Carlos4Seasons LLC as a limited liability company on March 24, 2011.  The articles of organization list Rivera as the registered agent and identify the most current principal office address as 4509 47th St, Kenosha, WI.  According to records from WI DFI, the Department administratively dissolved Carlos4Seasons LLC effective March 20, 2017.

**Bank Accounts:  Entity A**

11.     Case agents have obtained and analyzed bank account records of a bar/registered money service business that offers check-cashing services in Kenosha, Wisconsin ("Entity A" in this affidavit).  The review of these bank records revealed that Entity A regularly deposits checks that have third-party payees and then immediately withdraws cash in amounts similar to the checks deposited.  Based on my training and experience, this pattern of banking activity is typical for check cashing businesses.

12.     The analysis of Entity A's business account deposits between 2013 and 2017 includes 1,159 third party checks totaling $1,239,764.11 endorsed to Carlos Rivera, Carlos4Seasons LLC, or variations of Carlos4Seasons LLC.  Many of the check memos reference invoice numbers, snow removal, plowing, landscape work, mowing, lawn care, grass cutting, or other information indicating that the checks are payment for services provided.  Based on a review of the endorsement on the backs of these checks, they appear to bear the same signature.  I recognize that signature from my involvement in this

5

investigation as that of Carlos Rivera. Additionally, the number R1601008217106, which is Rivera's Wisconsin driver's license number, is included on some of the endorsements. Based on my training and experience, this indicates that Rivera cashed these third-party checks at Entity A, and that the checks were payment for landscaping, lawncare, snow-removal, and other similar services provided by Rivera.

**Bank Accounts: Carlos Rivera and Carlos4Seasons**

13.    Case agents have obtained and analyzed bank records of personal and business accounts held by Rivera at JPMorgan Chase Bank through February 2020. Rivera opened personal checking account ending in 9387 ("x9387") on September 15, 2011, under the name Carlos Rivera. Rivera is the sole authorized signor on account x9387. Rivera opened business checking account ending 3202 ("x3202") on September 21, 2015, under the name Carlos4Seasons LLC. Rivera and Tarrah Neises[1] are signors on account 3202. Accounts x9387 and x3202 both list a mailing address of 4509 47th St, Kenosha, WI.

14.    Between 2013 and 2019, hundreds of deposits were made to Rivera account x9387 and Carlos4Seasons account x3202 totaling $1,483,596.65. The deposits consist of third-party checks, cash, and electronic payments from online payment processors and other third parties. There were also transfers between the accounts, purchase returns, and tax refund deposits that were not included in this deposit analysis because those are non-taxable items. The deposit amounts in this affidavit omit the non-taxable items, which represent approximately 3% of all deposits.

15.    Of the $1,483,596.65 in total deposits into accounts x9387 and x3202, $917,422.68 (approximately 62% of the total deposits) was deposited into Carlos4Seasons

---

[1] Based on public records, Neises owns and lives at 4509 47th St, Kenosha, WI, with Rivera.

account x3202, while $566,173.97 (approximately 38% of the deposits) was deposited into

made to Rivera account x9387. A total of $1,117,161.90 (approximately 75%) of the

deposits made to these two accounts were by third-party checks. Many of the third-party

checks deposited into the accounts have memos referencing invoice numbers, snow

removal, plowing, landscape work, mowing, lawn care, grass cutting, or other information

resembling gross receipts for services provided. The volume and dollar amount of check

deposits into accounts x9387 and x3202 continually increased each year as Rivera slowed

and eventually stopped cashing checks at Entity A. A total of $272,099 (approximately

18%) of the deposits were in cash. The vast majority of the cash deposits into accounts

x9387 and x3202 were made prior to 2018 and appear to have been used to pay bills from

the accounts. A total of $94,335.75 (approximately 6%) of the deposits were electronic

payments from payment processors such as Stripe and WePay.

16.     Based on an analysis of all withdrawals from Rivera account x9387 and

Carlos4Seasons account x3202 between 2013 and 2019, there were no payroll checks or

payments to laborers. However, during that same period, there were 562 cash withdrawals

made from these accounts totaling $710,829. Several of these cash withdrawals were in

large amounts between $5,000 and $11,000. Based on my training and experience,

businesses that pay cash payroll often cash gross receipts checks and then withdraw cash

from business accounts to pay their employees in cash.

**Tax Records**

17.     IRS records show that Rivera is the sole member and owner of

Carlos4Seasons LLC. Income from Carlos4Seasons LLC is reported on a Schedule C

attached to Rivera's Form 1040, US Individual Income Tax Returns. Each tax year from

7

2013 through 2019, Rivera has filed a Form 1040 tax return. Rivera's most recent tax return filing, a 2019 Form 1040, was signed and dated July 15, 2020, and mailed to the IRS Center in Fresno, CA. Each of Rivera's Form 1040 tax returns was self-prepared, and each lists Rivera's home address as 4509 47th Street, Kenosha, WI.

18. From 2013 through 2019, all of Rivera's Form 1040 income was reported on a Schedule C, Profit or Loss From Business, with the exception of one 2013 Form W-2, Wage and Tax Statement, that Rivera received from Saint Vincent DePaul listing $368 in wages. Each Schedule C lists Rivera's business name as Carlos4Seasons and identifies the principal business or profession as landscaping. The Schedule Cs list the business address for Carlos4Seasons as 4509 47th Street, Kenosha, WI.

19. From 2013 through 2019 various entities issued Rivera and Carlos4Seasons a total of 89 Forms 1099-MISC for non-employment compensation totaling $872,196. Each of the Forms 1099-MISC list the payee as either Rivera or Carlos4Seasons and list the payee address of 4509 47th Street, Kenosha, WI.

20. From 2013 through 2019 Rivera reported minimal income from Carlos4Seasons with an average annual net profit of $3,174. When the case agent compared the reported Schedule C gross receipts to Forms 1099-MISC filed with the IRS, checks cashed at Entity A, and the deposits made to Rivera's Chase Bank accounts, Rivera appears to have significantly underreported gross receipts each year since 2013. The case agent's analysis shows that, from 2013 through 2019, Rivera's total deposits and cashed checks were $2,723,360.76, the total filed Forms 1099-MISC were $872,196, and the total reported Schedule C gross receipts for Carlos4Seasons were $790,351. Based on these amounts, Rivera has reported only 29% of his total deposits and cashed checks and 91%

8

of the filed Forms 1099-MISC. This underreporting of deposits, cashed checks, and non-employee compensation shows the potential for significant unreported sales and the subsequent assessment of income taxes. Appendix 1 to this affidavit provides a breakdown of these comparisons and identifies unreported deposits and cashed checks of over $1.9 million.

21. The Schedule Cs for Carlos4Seasons LLC list no wages expenses from 2013 through 2019. The only labor-related expense deducted on the Schedule Cs is contract labor of $48,156 deducted on the 2016 Schedule C. Since landscaping is a labor-intensive business, there is probable cause to believe that Rivera underreported labor expenses for Carlos4Seasons LLC.

22. No Form 941s, Employer's Quarterly Federal Tax Returns, have been filed by Carlos4Seasons LLC to report wages paid to employees or federal taxes withheld from those wages. Additionally, Carlos4Seasons LLC has not reported any wages to the State of Wisconsin Department of Workforce Development for unemployment insurance.

**Baxter Credit Union Auto Loan**

23. On May 31, 2019, case agents obtained records from Baxter Credit Union ("BCU" in this affidavit) pursuant to a subpoena. The records include a membership application, loan application, and account statements for an auto loan Rivera received from BCU. On February 9, 2019, Rivera received a $56,426.36 auto loan from BCU for the purchase of a 2015 Chevrolet Silverado from Auto World Inc. in Kenosha, WI. On the loan application, Rivera listed his address as 4509 47th Street, Kenosha, WI 53144, and stated he has been at that address for seven years. On the loan application, Rivera stated that he is the owner of Carlos4Seasons and that his gross annual income is $95,000.

9

24.     As part of the loan application Rivera submitted to Baxter Credit Union, Rivera provided a 2018 Form 1040, US Individual Income Tax Return, listing significantly more income than the 2018 Form 1040 tax return Rivera filed with the IRS on July 1, 2019. The only source of income on both returns is Rivera's sole proprietorship, Carlos4Seasons LLC, which is reported on a Schedule C attached to Rivera's Form 1040 tax return. The following table summarizes and compares the two tax returns:

| COMPARISON OF 2018 FORMS 1040 | | | | |
|---|---|---|---|---|
| | | | | |
| | 2018 FORM 1040 | | 2018 FORM 1040 | |
| PARTICULARS | FILED WITH IRS | | GIVEN TO BCU | DIFFERENCE |
| | | | | |
| Business income or (loss) | $    1,585.00 | $    69,570.00 | $    67,985.00 |
| | | | | |
| Total income | $    1,585.00 | $    69,570.00 | $    67,985.00 |
| | | | | |
| Total tax | $    224.00 | $    15,037.00 | $    14,813.00 |
| | | | | |
| Amount you owe | $    224.00 | $    15,037.00 | $    14,813.00 |

## Surveillance

25.     On March 28, 2019, the case agent conducted surveillance beginning at approximately 6:45 AM in the vicinity of 4509 47th Street, Kenosha, WI. During the surveillance the case agent observed the following activity:

a.  At approximately 7:45 AM, Rivera exited the residence at 4509 47th Street, Kenosha, WI, and entered a white Chevrolet Silverado with Wisconsin license plate number NP1888. Rivera drove away and was followed by the case agent.

b.  At approximately 7:59 AM, Rivera pulled into the parking lot at 1155 Sheridan Road, Kenosha, WI. Rivera exited the truck and went inside the building. Among the other vehicles parked in the parking lot were:
    i.  A Mitsubishi box truck with lawn mowers in the box. The sides of the truck had signs that listed "4 Seasons" and the phone number 262-620-0927; that phone number currently(that is, as of January 22, 2021) is publicly listed as the phone number for Carlos 4 Seasons Landscaping and Snow Removal, at the postal address 4509 47th Street, Kenosha, WI 53144.

10

ii. A Chevy Silverado with Wisconsin license plate number KJ1869. There were leaf blowers and other landscaping and lawncare equipment in the bed of the truck.

c. At approximately 8:25 AM, Rivera entered the Silverado with plate NP1888 and multiple unknown males entered the Mitsubishi box truck and Silverado with plate KJ1869. The vehicles caravanned to the BP gas station at 1150 Green Bay Road, Kenosha, WI. At the gas station I observed at least 6 males exit the vehicles including Rivera. The men got gas and briefly entered the store and came out with food. After exiting the store, the men entered their vehicles and drove off in a caravan at approximately 8:45 AM.

d. At approximately 9:00 AM, the caravan stopped at The Bay At Waters Edge, located at 3415 Sheridan Road in Kenosha, WI. The men were seen exiting their vehicles and appeared to be cleaning up the grounds.

26. On January 19, 2021, the case agent conducted surveillance beginning at approximately 7:00 AM in the vicinity of 4509 47th Street, Kenosha, WI. During the surveillance the case agent observed the following activity:

a. At approximately 7:45 AM, the case agent observed Rivera and two children exit the residence at 4509 47th Street, Kenosha, WI. Rivera stood outside with the children near Endee Park.

b. At approximately 7:55 AM, a school bus arrived and the children got on the bus. Then, Rivera entered a white Chevrolet Silverado pickup truck that was parked in the street in front of the residence. The truck had Wisconsin license plate number DH17121 and is registered to Rivera at 4509 47th Street, Kenosha, WI – that is, the same address that throughout this investigation has been identified (through prior surveillance, bank records, tax records, public records, and other sources) as the one – and the only one – tied to Rivera's business.

**Trash Collection**

27. On October 29, 2019, the case agent collected three full white trash bags that had been placed at the curbside in front of 4509 47th Street, Kenosha, WI. The case agent examined the contents of the trash bags and located the following documents:

a. Two charts listing businesses and the monthly billings associated with the businesses between Nov 2019 and March 2020. Some of the names on these charts are known customers of Carlos4Seasons.

b. A chart of businesses and individuals and the billings associated with them under the following categories: Plow, Tractor, Shovel, and Salt. Some of the names on this chart are known customers of Carlos4Seasons.

c. Two corner pieces of ripped pages containing numbered lists of individuals, businesses, and their addresses. One of the pieces of paper shows numbers 23 through 31 and the other shows numbers 56 through 63. Some of the names on these lists are known customers of Carlos4Seasons.

**Mail Covers**

28. From February 14, 2019 to March 15, 2019 and from October 23, 2019 to November 21, 2019, the case agent had an active mail cover through the United States Postal Service on 4509 47th Street, Kenosha, WI. A mail cover entails government agents examining those parts of mail articles that are visible without opening the article of mail. During both mail covers, there were multiple envelopes addressed to Carlos4Seasons and Carlos Rivera from individuals and companies who are Rivera's known customers. For example, on November 7, 2019, an envelope addressed to Carlos Rivera at 4509 47th Street, Kenosha, WI, arrived from Willow Point Plaza LLC. Willow Point Plaza LLC is a known customer of Carlos4Seasons. The envelope had a clear window in which the words "Pay to the order of" were visible. Based on my training and experience, this mailing was a check payment. These mail covers, along with the trash collection and the rest of the investigation, provide further evidence that Rivera's business records are located at 4509 47th Street, Kenosha, WI.

Case 2:21-mj-00049-WED   Filed 01/25/21   Page 13 of 24   Document 1

## COMPUTERS, ELECTRONIC STORAGE, AND FORENSIC ANALYSIS

29.   As described above and in Attachment B, this application seeks permission to search for records that might be found on the premises, in whatever form they are found. One form in which the records might be found is data stored on a computer's hard drive or other storage media.  Thus, the warrant applied for would authorize the seizure of electronic storage media or, potentially, the copying of electronically stored information, all under Rule 41(e)(2)(B).

30.   I submit that if a computer or storage medium is found on the premises, there is probable cause to believe those records will be stored on that computer or storage medium, for at least the following reasons:

a.   Based on my knowledge, training, and experience, I know that computer files or remnants of such files can be recovered months or even years after they have been downloaded onto a storage medium, deleted, or viewed via the Internet.  Electronic files downloaded to a storage medium can be stored for years at little or no cost.  Even when files have been deleted, they can be recovered months or years later using forensic tools.  This is so because when a person "deletes" a file on a computer, the data contained in the file does not actually disappear; rather, that data remains on the storage medium until it is overwritten by new data.

b.   Therefore, deleted files, or remnants of deleted files, may reside in free space or slack space—that is, in space on the storage medium that is not currently being used by an active file—for long periods of time before they are overwritten.  In addition, a computer's operating system may also keep a record of deleted data in a "swap" or "recovery" file.

c.   Wholly apart from user-generated files, computer storage media—in particular, computers' internal hard drives—contain electronic evidence of how a computer has been used, what it has been used for, and who has used it.  To give a few examples, this forensic evidence can take the form of operating system configurations, artifacts from operating system or application operation, file system data structures, and virtual memory "swap" or paging files.  Computer users typically do not erase or delete this evidence, because special software is

13

typically required for that task. However, it is technically possible to delete this information.

d. Similarly, files that have been viewed via the Internet are sometimes automatically downloaded into a temporary Internet directory or "cache."

e. Based on evidence related to this investigation, I am aware that computer equipment was used to generate, store, and print documents related to the criminal conduct. There is reason to believe that there is a computer system currently located on the premises.

31. As further described in Attachment B, this application seeks permission to locate not only computer files that might serve as direct evidence of the crimes described on the warrant, but also for forensic electronic evidence that establishes how computers were used, the purpose of their use, who used them, and when. There is probable cause to believe that this forensic electronic evidence will be on any storage medium at the premises because:

a. Data on the storage medium can provide evidence of a file that was once on the storage medium but has since been deleted or edited, or of a deleted portion of a file (such as a paragraph that has been deleted from a word processing file). Virtual memory paging systems can leave traces of information on the storage medium that show what tasks and processes were recently active. Web browsers, e-mail programs, and chat programs store configuration information on the storage medium that can reveal information such as online nicknames and passwords. Operating systems can record additional information, such as the attachment of peripherals, the attachment of USB flash storage devices or other external storage media, and the times the computer was in use. Computer file systems can record information about the dates files were created and the sequence in which they were created, although this information can later be falsified.

b. As explained herein, information stored within a computer and other electronic storage media may provide crucial evidence of the "who, what, why, when, where, and how" of the criminal conduct under investigation, thus enabling the United States to establish and prove each element or alternatively, to exclude the innocent from further suspicion. In my training and experience, information stored within a computer or storage media (e.g., registry information, communications, images and movies, transactional information, records of session times and durations, internet history, and anti-virus, spyware, and malware

14

detection programs) can indicate who has used or controlled the computer or storage media. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence. The existence or absence of anti-virus, spyware, and malware detection programs may indicate whether the computer was remotely accessed, thus inculpating or exculpating the computer owner. Further, computer and storage media activity can indicate how and when the computer or storage media was accessed or used. For example, as described herein, computers typically contain information that log: computer user account session times and durations, computer activity associated with user accounts, electronic storage media that connected with the computer, and the IP addresses through which the computer accessed networks and the internet. Such information allows investigators to understand the chronological context of computer or electronic storage media access, use, and events relating to the crime under investigation. Additionally, some information stored within a computer or electronic storage media may provide crucial evidence relating to the physical location of other evidence and the suspect. For example, images stored on a computer may both show a particular location and have geolocation information incorporated into its file data. Such file data typically also contains information indicating when the file or image was created. The existence of such image files, along with external device connection logs, may also indicate the presence of additional electronic storage media (e.g., a digital camera or cellular phone with an incorporated camera). The geographic and timeline information described herein may either inculpate or exculpate the computer user. Last, information within a computer may provide relevant insight into the computer user's state of mind as it relates to the offense under investigation. For example, information within the computer may indicate the owner's motive and intent to commit a crime (e.g., internet searches indicating criminal planning), or consciousness of guilt (e.g., running a "wiping" program to destroy evidence on the computer or password protecting/encrypting such evidence in an effort to conceal it from law enforcement).

c.  A person with appropriate familiarity with how a computer works can, after examining this forensic evidence in its proper context, draw conclusions about how computers were used, the purpose of their use, who used them, and when.

d.  The process of identifying the exact files, blocks, registry entries, logs, or other forms of forensic evidence on a storage medium that are necessary to draw an accurate conclusion is a dynamic process. While it is possible to specify in advance the records to be sought, computer evidence is not always data that can be merely reviewed by a review team and passed along to investigators. Whether data stored on a

15

computer is evidence may depend on other information stored on the computer and the application of knowledge about how a computer behaves. Therefore, contextual information necessary to understand other evidence also falls within the scope of the warrant.

e. Further, in finding evidence of how a computer was used, the purpose of its use, who used it, and when, sometimes it is necessary to establish that a particular thing is not present on a storage medium. For example, the presence or absence of counter-forensic programs or anti-virus programs (and associated data) may be relevant to establishing the user's intent.

32. In most cases, a thorough search of a premises for information that might be stored on storage media often requires the seizure of the physical storage media and later off-site review consistent with the warrant. In lieu of removing storage media from the premises, it is sometimes possible to make an image copy of storage media. Generally speaking, imaging is the taking of a complete electronic picture of the computer's data, including all hidden sectors and deleted files. Either seizure or imaging is often necessary to ensure the accuracy and completeness of data recorded on the storage media, and to prevent the loss of the data either from accidental or intentional destruction. This is true because of the following:

a. The time required for an examination. As noted above, not all evidence takes the form of documents and files that can be easily viewed on site. Analyzing evidence of how a computer has been used, what it has been used for, and who has used it requires considerable time, and taking that much time on premises could be unreasonable. As explained above, because the warrant calls for forensic electronic evidence, it is exceedingly likely that it will be necessary to thoroughly examine storage media to obtain evidence. Storage media can store a large volume of information. Reviewing that information for things described in the warrant can take weeks or months, depending on the volume of data stored, and would be impractical and invasive to attempt on-site.

b. Technical requirements. Computers can be configured in several different ways, featuring a variety of different operating systems, application software, and configurations. Therefore, searching them sometimes requires tools or knowledge that might not be present on the search site. The vast array of computer hardware and software available

16

makes it difficult to know before a search what tools or knowledge will be required to analyze the system and its data on the Premises. However, taking the storage media off-site and reviewing it in a controlled environment will allow its examination with the proper tools and knowledge.

c. Variety of forms of electronic media. Records sought under this warrant could be stored in a variety of storage media formats that may require off-site reviewing with specialized forensic tools.

33. Based on the foregoing, and consistent with Rule 41(e)(2)(B), the warrant I am applying for would permit seizing, imaging, or otherwise copying storage media that reasonably appear to contain some or all of the evidence described in the warrant, and would authorize a later review of the media or information consistent with the warrant. The later review may require techniques, including but not limited to computer-assisted scans of the entire medium, that might expose many parts of a hard drive to human inspection in order to determine whether it is evidence described by the warrant.

## CONCLUSIONS

34. Based upon the facts set forth above, I believe there is probable cause that items described in Attachment B of this affidavit are evidence of the crimes described in this affidavit and are currently located at the premises, more particularly described in Attachment A.

35. I respectfully request that a search warrant be issued authorizing the search of this premises for items described in Attachment B, which constitute evidence, fruits, and instrumentalities of the criminal offenses described in this Affidavit.

17

**ATTACHMENT A**
DESCRIPTION OF THE PREMISES

The residence of Carlos Rivera, located at 4509 47th Street, Kenosha, Wisconsin 53144. The residence is located on the south side of 47th Street. The residence is a single story ranch style home with a detached garage. The number "4509" is secured to the wooden mailbox post at the curb in front of the residence using black metal numbers. The front of the residence is faced with tan colored bricks, white siding, black shutters, and diamond shaped window grilles. The driveway is located at the west side of the residence and leads to a detached garage with white siding.



**ATTACHMENT B**

ITEMS TO BE SEIZED

All records and information relating to violations of Title 26 United States Code, Sections 7201 and 7206 (1), those violations involving Carlos Rivera and Carlos4Seasons LLC, occurring after 2012, including but not limited to:

1.      Any and all accounting books and records: ledgers, journals, subsidiary ledgers, financial statements, gross receipts and income records, cash receipts and disbursements records and/or journals, sales and purchase records and/or journals, accounts receivable and payable ledgers and records, bad debt records, cost of goods sold records, loan receivable and payable ledgers, voucher register and all sales and expense invoices including all invoices documenting expenses paid in cash or bank checks and retained copies of any bank checks, and any other handwritten summaries/notes or schedules.

2.      Any and all financial records reflecting income and expenses including: bank statements, records reflecting dates and amounts of deposits, deposit slips, records reflecting dates and amounts of withdrawals, withdrawal slips, debit and credit memos, records reflecting the identity of checks deposited, records disclosing the disposition of withdrawals, check registers, checks and deposit tickets including cash deposits, certificates of deposit, money market certificates, US Treasury notes or bills, cancelled checks (front and back), check stubs, money orders and receipts, cashier's checks, travelers checks, wire transfers, records reflecting the transfer of funds, bank notices, trust account records, brokerage account records, signature cards, foreign bank records, and any other records relating to bank accounts.

3.      Any and all federal and state income, employment, payroll, excise and sales tax returns, whether filed with the IRS or not, tax return information including any work

19

papers used in the preparation of the returns and any correspondence with accountants or return preparers, any tax return schedules and forms, payroll records, Forms W-2, Forms W-3, and Forms 1099.

4.      Any and all employment records including documents reflecting the names, street addresses, phone numbers, other personal identification information, and correspondence of all former and present employees, payroll journals, employment agreements, and any other records reflecting the methods used to pay employees, the wage amounts paid, hours worked, and taxes withheld from wages.

5.      Titles to assets, real estate records, foreign real estate and other assets, travel and vacation records, IRA and 401K records, loan records, stocks and bonds records, insurance records, passbooks, wills, inheritance records, gift records, gambling records, trust records, records for the purchase of precious metals, and other investment records.

6.      Documents and items evidencing the obtaining, secreting, transfer, and/or concealment of assets and expenditure of money.

7.      Records of off-site storage locations, including but not limited to safe deposit boxes, keys and records, and records of storage facilities such as receipts, keys, and rental agreements.

8.      Client and supplier records including names, address and telephone books, work orders, notes, transaction records including subsidiary ledgers, schedules, summaries, and other financial statements identifying clients and suppliers.

9.      Tax manuals, IRS correspondence, instructions and reference materials containing information about taxes, tax avoidance schemes, offshore banking, cash smuggling, and concealment of income.

20

10. Cellular telephones, Smartphones, pagers, text messaging systems, and other communication devices, including devices capable of sending, receiving, or storing emails, and any and all records associated with such communications services.

11. For any computer or storage medium whose seizure is otherwise authorized by this warrant, and any computer or storage medium that contains or in which is stored records or information that is otherwise called for by this warrant (hereinafter, "COMPUTER"):

   a. evidence of who used, owned, or controlled the COMPUTER at the time the things described in this warrant were created, edited, or deleted, such as logs, registry entries, configuration files, saved usernames and passwords, documents, browsing history, user profiles, email, email contacts, "chat," instant messaging logs, photographs, and correspondence;

   b. evidence of software that would allow others to control the COMPUTER, such as viruses, Trojan horses, and other forms of malicious software, as well as evidence of the presence or absence of security software designed to detect malicious software;

   c. evidence of the lack of such malicious software;

   d. evidence indicating how and when the computer was accessed or used to determine the chronological context of computer access, use, and events relating to crime under investigation and to the computer user;

   e. evidence indicating the computer user's state of mind as it relates to the crime under investigation;

   f. evidence of the attachment to the COMPUTER of other storage devices or similar containers for electronic evidence;

   g. evidence of counter-forensic programs (and associated data) that are designed to eliminate data from the COMPUTER;

   h. evidence of the times the COMPUTER was used;

   i. passwords, encryption keys, and other access devices that may be necessary to access the COMPUTER;

j.   documentation and manuals that may be necessary to access the COMPUTER or to conduct a forensic examination of the COMPUTER;

k.   records of or information about Internet Protocol addresses used by the COMPUTER;

l.   records of or information about the COMPUTER's Internet activity, including firewall logs, caches, browser history and cookies, "bookmarked" or "favorite" web pages, search terms that the user entered into any Internet search engine, and records of user-typed web addresses;

m.   contextual information necessary to understand the evidence described in this attachment.

As used above, the terms "records" and "information" includes all forms of creation or storage, including any form of computer or electronic storage (such as hard disks or other media that can store data); any handmade form (such as writing); any mechanical form (such as printing or typing); and any photographic form (such as microfilm, microfiche, prints, slides, negatives, videotapes, motion pictures, or photocopies).

The term "computer" includes all types of electronic, magnetic, optical, electrochemical, or other high speed data processing devices performing logical, arithmetic, or storage functions, including desktop computers, notebook computers, mobile phones, tablets, server computers, and network hardware.

The term "storage medium" includes any physical object upon which computer data can be recorded. Examples include hard disks, RAM, floppy disks, flash memory, CD-ROMs, and other magnetic or optical media.

| APPENDIX 1 - COMPUTATION OF UNREPORTED DEPOSITS AND CASHED CHECKS | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| PARTICULARS | 2013 | 2014 | 2015 | 2016 | 2017 | 2018 | 2019 | TOTAL |
| | | | | | | | | |
| CARLOS4SEASONS LLC - DEPOSITS | NA | NA | $ 17,062.40 | $ 93,017.92 | $ 87,834.18 | $ 328,393.36 | $ 391,114.82 | $ 917,422.68 |
| Chase Bank Account 768153202 | | | | | | | | |
| | | | | | | | | |
| CARLOS RIVERA - DEPOSITS | $ 42,268.00 | $ 86,738.29 | $ 47,362.00 | $ 25,041.51 | $ 68,846.16 | $ 159,533.16 | $ 136,384.85 | $ 566,173.97 |
| Chase Bank Account 987439387 | | | | | | | | |
| | | | | | | | | |
| CASHED CHECKS | $ 181,717.16 | $ 292,477.85 | $ 326,257.10 | $ 329,442.50 | $ 109,869.50 | $ - | $ - | $ 1,239,764.11 |
| Carl and Doug's Bar | | | | | | | | |
| | | | | | | | | |
| TOTAL DEPOSITS AND CASHED CHECKS | $ 223,985.16 | $ 379,216.14 | $ 390,681.50 | $ 447,501.93 | $ 266,549.84 | $ 487,926.52 | $ 527,499.67 | $ 2,723,360.76 |
| | | | | | | | | |
| SCHEDULE C GROSS RECEIPTS | $ 97,216.00 | $ 130,802.00 | $ 137,771.00 | $ 164,572.00 | $ 48,636.00 | $ 76,654.00 | $ 134,700.00 | $ 790,351.00 |
| | | | | | | | | |
| UNREPORTED DEPOSITS AND CASHED CHECKS | $ 126,769.16 | $ 248,414.14 | $ 252,910.50 | $ 282,929.93 | $ 217,913.84 | $ 411,272.52 | $ 392,799.67 | $ 1,933,009.76 |

23